UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Irma Rosas, *Plaintiff*, v. Walmart Inc. d/b/a/ Sam's West Inc., *Defendant*. | No. 24 CV 7409 Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Irma Rosas, proceeding *pro se*, brings this employment discrimination action against her former employer, Walmart Inc., d/b/a/ Sam's West, Inc. ("Walmart"). Rosas claims that Walmart discriminated and retaliated against her based on her race, national origin, and disability in violation of the Civil Rights Act of 1964 (Title VII) and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, eventually forcing her to quit.[1] [Dkt. 10.] Before the Court is Walmart's motion to dismiss the complaint. [Dkt. 20.] For the reasons below, the motion is granted in part and denied in part.

**I. Background**

The Court takes Rosas' well-pleaded factual allegations as true for purposes of ruling on the motion to dismiss. *Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 607 (7th Cir. 2023). Rosas, who identifies as Hispanic-Mexican and Chicana, was hired by Sam's Club (a Walmart subsidiary) as a cake decorator on April 14, 2023. [Dkt. 10,

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

¶ 1.] As part of her job, Rosas frosted cupcakes every week for eight hours a day. On May 17, about a month after starting, Rosas began experiencing symptoms of carpal tunnel syndrome, allegedly from the repetitive motions required in her job, and requested information on how to file a medical accommodation request from Miacalla Dixon (Bakery Fresh Manager and Rosas' immediate supervisor) and Elena Guerrero (Human Resources) but received no response. [*Id.* at ¶¶ 2, 4, 31.] On May 19, she filed a medical accommodation request with the Walmart Accommodation Service Center ("WASC"), in which she included medical documentation from 2018 and 2019. WASC denied her request until she submitted updated medical documentation. [*Id.* at ¶¶ 5–9.] Rosas continued her cake decorating duties (aggravating her carpal tunnel), scheduled doctor's appointments, and kept WASC apprised of her efforts to obtain updated medical documentation. WASC closed her accommodation request on June 15, 2023. [*Id.* at ¶¶ 10–13.]

Before WASC closed her request, Rosas made the first of multiple complaints against coworkers. On May 25, 2023, she complained that baker Roberto Montesinos repeatedly called her "*abuelita*/grandma" and failed to stop when told several times to stop. Rosas discussed this complaint "and other issues" with Dixon and Daniel Ance (position unspecified), and memorialized the meeting in an email to Dixon, Ance, and Antonio Garcia (Store Manager). She described the "disparate treatment she was receiving from Dixon as compared to the other cake decorators and that it was aggravating her carpel tunnel." Dixon is Black. Neither Dixon nor Ance responded to

2

the email. Rosas later discovered that she emailed the wrong Antoino Garica and requested the correct email from HR but never got a response. [*Id.* at ¶¶ 14–20.]

On July 21, 2023, Rosas filed a second in-store complaint for a "hostile work environment" against Catrisse Plunkett and Tierra Coats (cake decorators) and Danielle Scott (bakery lead). All three women are Black. Rosas also informed Sam's Club that the hostile work environment was affecting her mental health. No one met with Rosas to discuss this complaint. [*Id.* at ¶ 22.] On August 7, 2023, Rosas filed an ethics complaint with Walmart about "disparate treatment, race and disability discrimination, and retaliation." [*Id.* at ¶ 24.] She filed a third in-store complaint against Scott on August 30, 2023, alleging that Scott was preventing her from performing her duties. On September 2, 2023, Rosas filed a fourth in-store complaint for continued hostile work environment against Plunkett, Coats, and Michelle Hicks (position unspecified), and disparate treatment by Scott. [*Id.* at ¶¶ 29–32, 34.] She also told the store that Plunkett and Coats were combining their breaks and often taking more than their allotted one-hour. No one met with Rosas to discuss her in-store complaints. [*Id.* at ¶¶ 23, 30, 33–34.] However, on August 25, 2023, she was escorted to the manager's office who referenced her ethics complaint when asked what the meeting was about. Rosas didn't make further allegations about the meeting. [*Id.* at ¶ 27.]

Rosas alleges that her complaints were interspersed by various adverse employment actions. On June 21, 2023, after her first complaint, the store claimed Rosas had been absent even though she wasn't scheduled to work that day. [*Id.* at

3

¶ 21.] On August 22, after her second in-store complaint, the store denied her request to take August 31 off for a doctor's appointment to obtain updated medical documentation requested by WASC. The store had never rejected a previous request by Rosas for time off or requested that she use PTO to do so. Rosas communicated her concerns about being denied time off to see her doctor to HR. [*Id.* at ¶¶ 25–26, 28.] On September 8, 2023, shortly after Rosas made her fourth in-store complaint, her jacket went missing from where she always left it. While on her second break that day, Dixon falsely accused her of taking her two breaks together and ordered her to return to the bakery. [*Id.* at ¶¶ 35–36.]

On September 9, 2023, Rosas called the store and informed "Coach Nicole" (position unspecified) that she could no longer work at Sam's Club. She emailed the same to Hazel Burns (HR) and Fernando Rios (the new Store Manager) along "with her reasons." Rosas was never written up for anything during her employment. At the time she left, a second medical accommodation request that she opened on August 31, 2023 was still pending. [*Id.* at ¶¶ 31, 37–39.]

Rosas filed a charge of discrimination and retaliation under Title VII and the ADA with the EEOC on October 3, 2023 and received a right-to-sue letter on May 23, 2024. [*Id.* at 8–9.] Rosas then initiated this action, alleging race and national origin discrimination under Title VII (Count I); retaliation under Title VII (Count II); and discrimination and failure to accommodate under the ADA (Count III).

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. The Court takes well-pleaded factual allegations as true and draws

4

reasonable inferences in the plaintiff's favor. *Reardon v. Danley*, 74 F.4th 825, 827 (7th Cir. 2023); *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023). "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (cleaned up). The Court may also review documents attached to the complaint without converting the motion into one for summary judgment. *Yash Venture Holdings, LLC v. Moca Fin., Inc.*, 116 F.4th 651, 659 n.11 (7th Cir. 2024), *reh'g denied*, 2024 WL 4257157 (7th Cir. Sept. 20, 2024). Here, that includes Rosas' EEOC charge and right-to-sue letter. Because Rosas is proceeding *pro se*, her complaint is construed "generously," *United States v. Hassebrock*, 21 F.4th 494, 498 (7th Cir. 2021), and reviewed "by substance, not label," *United States v. Sutton*, 962 F.3d 979, 984 (7th Cir. 2020).

### III. Analysis

#### A. Exhaustion

To bring a Title VII claim, a plaintiff must first exhaust their administrative remedies by filing charges with the EEOC and receiving a right-to-sue letter. 42 U.S.C. § 2000e-5(b), (e), and (f); *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019); *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (EEOC exhaustion "is a condition precedent with which Title VII plaintiffs must comply"). A plaintiff may then sue in federal court, but the scope of available Title VII claims is limited to those "that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such

allegations." *Chaidez*, 937 F.3d at 1004 (internal quotation omitted). A claim is "reasonably related" when (1) "there is a factual relationship between the allegations in the charge and the claims in the complaint" and (2) "the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.* (internal quotation omitted). At minimum, the charge and complaint should describe the "same conduct and implicate the same individuals." *Id.* (cleaned up).

Walmart argues that Rosas' Title VII race discrimination claim should be dismissed because she failed to include it in her EEOC charge, and it's not reasonably related to the allegations in the charge. [Dkt. 21 at 4–5.] Specifically, Walmart contends that Rosas didn't reference race in the context of her discrimination allegations or include other factual allegations supporting a race discrimination claim. [Dkt. 26 at 1–3.]

In disagreeing, this Court is guided by the principle that the scope of an EEOC charge should be reviewed liberally. *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 831 (7th Cir. 2015). Rosas' EEOC charge is brief (seven sentences across three paragraphs) but sufficiently describes race discrimination when read as a whole. The charge first describes the factual allegations underlying her legal claims, explaining that her employer was aware of her disability when she was hired, that she was nevertheless denied reasonable accommodation and "given different assignments than my similarly situated, non-Hispanic counterparts." [Dkt. 10 at 8.] She then explains that she complained and was "constructively discharged."

6

[*Id.*] This is sufficient to raise a race discrimination claim because Rosas alleged disparate treatment based on her "Hispanic" identity, a term that courts have understood alerts the EEOC to both race and national origin-related claims. *See, e.g.*, *Gaytan v. City of Chicago*, 2012 WL 2597932, at *6 (N.D. Ill. July 5, 2012) ("'Hispanic' does not connote a specific country of origin."). In the next paragraph, Rosas states her legal claim: "I have been discriminated against because of my national origin, Chicana/Mexican . . . in violation of Title VII . . . ." [Dkt. 10 at 8.] Walmart hones in on this sentence, pointing out that it mentions national origin but not race. [Dkt. 26 at 2.] But Rosas did, in substance, allege racial discrimination in her charge about being treated differently than non-Hispanic coworkers. It's also clear that her legal claim (which has no other factual allegations) is based on the factual allegations she previously described. Her attempt to articulate her legal claim then, when understood in context of her factual allegations, would plausibly alert the EEOC to discrimination claims based on both race and national origin. Rosas has therefore exhausted her Title VII race discrimination claim.

  **B. Title VII Discrimination**

Title VII makes it unlawful for an employer "to discriminate against any individual" with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). Rosas alleges that she was subjected to disparate treatment and a hostile work environment based on her race and national origin in violation of Title VII (Count I).

To state a Title VII discrimination claim based on a disparate treatment theory, a plaintiff must adequately plead that she suffered an adverse employment action that was motivated by intentional discrimination. *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017). The pleading requirement for such claims "is minimal," and a plaintiff need not allege facts establishing a prima facie case of discrimination. *Clark v. Law Off. of Terrence Kennedy, Jr.*, 709 F. App'x 826, 828 (7th Cir. 2017); *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1337–38 (7th Cir. 2024) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

In moving to dismiss Rosas' discrimination claim, Walmart argues that her allegations are too general to show a plausible inference of race or national origin discrimination or give Walmart fair notice of her claims. [Dkt. 26 at 3.] Although Rosas filed multiple in-store complaints and an ethics complaint for "harassment" and "disparate treatment," Walmart says there are no "facts or circumstances alleged that show she suffered any adverse employment action based on her [race or national origin]." [*Id.* at 4.]

The United States Supreme Court in *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024), recently clarified that to show an adverse employment action, a plaintiff must show "some harm respecting an identifiable term or condition of employment," but that harm does not need to be "significant." A plaintiff alleging discrimination need not show that an employer's action was "serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." Instead, a plaintiff need only allege some "disadvantageous

8

change in an employment term or condition," which leaves the plaintiff "worse off" but not "significantly so." *Id.* at 354-59.

Rosas adequately alleges that she suffered an adverse action in the form of constructive termination. "[A]ll that is required to plead a constructive discharge claim is, at most, the identification of the situation, allegation of unlawful motivation, and specific examples of poor treatment." *Warren v. Millennium Hotels & Resorts*, 692 F. Supp. 3d 828, 832 (N.D. Ill. 2023) (citing *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014)). Rosas' complaint has sufficient specific examples of adverse treatment based on race and national origin to surmount Title VII's low pleading standard. Her first in-store complaint, for instance, claimed that a coworker made repeated derogatory and racially charged comments and wouldn't cease when asked. [Dkt. 10, ¶ 14 (alleging that a baker repeatedly called her "*abuelita*/grandma").] Such comments, depending on their pervasiveness and severity, can create a hostile work environment. *Alamo*, 864 F.3d at 549–50. A hostile work environment, in turn may constitute constructive termination if sufficiently egregious. *Beverly v. Abbott Lab'ys*, 107 F.4th 737, 745 (7th Cir. 2024). Rosas discussed her complaint with her immediate supervisor and memorialized the meeting in an email. Although she didn't allege whether Walmart took any corrective action, she stated that no one responded to her email and that she continued to complain about a hostile work environment in the store. This is enough for the Court to reasonably infer that Walmart didn't remedy the situation, which could give rise to employer liability. *Mason v. S. Illinois Univ. at Carbondale*, 233 F.3d 1036, 1043

9

(7th Cir. 2000) (employer liable for hostile work environment created by employee if negligent in discovering or remedying the harassment).

Other of the actions Rosas identifies don't qualify. For example, allegations about most of her in-store complaints reporting harassment and discriminatory treatment never describe the actual conduct complained of. These complaints as pled are too conclusory to sufficiently allege adverse employment actions. Rosas also cites other incidents including: on June 21, 2023, Walmart falsely accused her of missing a day of work; on August 22, 2023, she was denied time off to go to a doctor's appointment; and on September 8, 2023, her jacket went "missing" and Dixon falsely accused her of taking two breaks at once. [Dkt. 10, ¶¶ 21, 25, 35–36.] But she has not alleged how any of these actions left her "worse off" so they do not rise to the level of a discriminatory adverse action. *See, e.g.*, *Grady v. DM Trans, LLC*, 2024 WL 4581476, at \*3 (N.D. Ill. Oct. 25, 2024) (allegation that employer denied leave request outside of company policy was not a disadvantageous change in the employment terms or conditions).

Apart from racially derogatory comments, Rosas also alleges that Walmart didn't respond to most of her complaints and failed to provide reasonable medical accommodation, issues that non-Hispanic colleagues allegedly didn't face. [Dkt. 10, ¶¶ 7, 9, 23, 30, 34, 43.] Taking the allegations as true, failure to accommodate her disability or address complaints about discriminatory treatment because of Rosas' race or national origin plausibly left Rosas in a situation "so intolerable that a reasonable person would have felt compelled to resign." *Beverly*, 107 F.4th at 745

10

(internal quotation omitted). Rosa alleges that she did feel so compelled and on September 9, 2023, she informed her manager that she could no longer continue working. [Dkt. 10, ¶¶ 37–38.] The conditions Rosas describes "may not ultimately qualify as intolerable," enough to support constructive termination but the Court can't make that determination at the pleading stage "before any evidence is required." *Carlson*, 758 F.3d at 830. At this point, it was enough for Rosas to state that Walmart discriminated against her based on her race and national origin and provide examples indicating that she was adversely affected.

Rosas' hostile work environment claim also survives. To state a hostile work environment claim, a plaintiff must allege that: "(1) [she] was subject to unwelcome harassment; (2) the harassment was based on [her protected status]"; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability." *Alamo*, 864 F.3d at 549 (internal quotation omitted). Constructive termination based on discriminatory harassment requires conditions "even more egregious" than that needed for a hostile work environment claim. *Beverly*, 107 F.4th at 745. Having concluded that Rosas pled constructive termination to support her disparate treatment claim based on derogatory racial comments, the Court must also conclude that she has pled discrimination based on a hostile work environment. *See, e.g.*, *Warren*, 692 F. Supp. 3d at 832. The motion is denied as to Count I.

    C.    **Title VII Retaliation**

Rosas also brings a Title VII retaliation claim (Count II). Title VII prohibits discriminating against an employee "because he has opposed any practice made an

11

unlawful employment practice by" Title VII. 42 U.S.C. § 2000e–3(a). To state a Title VII retaliation claim, Rosas must plead that she "engaged in a statutorily protected activity and, as a result, experienced an adverse employment action." An employee engages in activity protected from retaliation under Title VII by either "(1) filing a charge, testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Title VII or other employment statutes; or (2) opposing an unlawful employment practice." *Northington v. H&M Int'l*, 712 F.3d 1062, 1065 (7th Cir. 2013). Internal or informal complaints to an employer and EEO charges can constitute protected activity. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663–64 (7th Cir. 2006). Regardless of the form of the complaint, it "must be *about* the [challenged] discrimination." *McHale v. McDonough*, 41 F.4th 866, 871 (7th Cir. 2022) (emphasis added).

Walmart first argues that Rosas failed to engage in statutorily protected activity. Rosas alleges that she filed four in-store complaints and one ethics complaint with Walmart about the "hostile work environment," "disparate treatment," "race and disability discrimination," and "retaliation." It's impossible to tell whether most of these complaints constitute protected activity because Rosas didn't state what conduct she actually complained about or, in most cases, even provide facts indicating that it was related to a protected characteristic. *See McHale*, 41 F.4th at 871; *Carlson*, 758 F.3d at 828 (protected activity must be specifically identified). However, Rosas did clearly engage in protected activity on May 25, 2023 when she filed an internal

12

complaint about racially derogatory comments made by a coworker. This is enough to satisfy the first prong.

Next, Walmart argues that Rosas failed to plead that she was subject to an adverse employment action *because of* protected activity. [Dkt. 26 at 5–7.] However, at the motion to dismiss stage, Rosas "is not required to plead a causal link between the protected activity and the adverse action." *Warren*, 692 F. Supp. 3d at 832 (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013)). All she needed to allege is a statutorily protected activity and materially adverse action. In the retaliation context, adverse actions are those "that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Wilson*, 724 F. App'x at 469 (internal quotation omitted). As with discriminatory adverse actions, mere inconveniences are insufficient. *Id.* Many actions that Rosas claims were adverse don't rise to this level. For instance, she makes a vague claim that, one day, the "hostile work environment" caused her to go to the emergency room, without any explanation of what the actual retaliatory conduct was. [Dkt. 10, ¶ 48.] Similarly, isolated annoyances can't be described as materially adverse.[2] But Rosas did allegedly suffer an adverse action when she was constructively terminated. This is enough to dissuade a reasonable employee from complaining about discrimination. Consequently, Rosas has sufficiently pled retaliation and Count II survives.

---

[2] For example, Rosas alleges that an employee once accused her of taking two breaks at once and demanded she go back to work; that the store once falsely accused her of missing a day of work; that it once denied her time off for a medical appointment; and that her jacket inexplicably went missing. [Dkt. 10, ¶¶ 25, 35–36.]

**D.     ADA Claims**

Rosas makes two claims under the ADA: (1) that Walmart failed to provide a reasonable accommodation for her disability even though she requested one for carpal tunnel; and (2) that Walmart discriminated against her by constructively terminating her. The Court takes each in turn.

To state a failure to accommodate claim under the ADA, Rosas must adequately plead that "(1) [she] is a "qualified individual with a disability"; (2) the defendant was aware of [her] disability; and (3) the defendant failed to reasonably accommodate [her] disability." *Gratzl v. Off. of Chief Judges of the 12th, 18th, 19th, & 22nd Jud. Circs.*, 601 F.3d 674, 678 (7th Cir. 2010) (quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)). Generally, a plaintiff "must request an accommodation for [her] disability in order to claim [she] was improperly *denied* an accommodation under the ADA." *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015).

Walmart argues that Rosas' complaint is deficient on all three prongs.[3] First, it contends that Rosas failed to plead that her alleged disability—carpal tunnel—is a disability within the meaning of the ADA. The ADA defines "disability" to include: (1) "a physical or mental impairment that substantially limits one or more major life activities"; (2) "a record of such impairment"; or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A–C). An impairment substantially limits a major life activity when a person "is either unable to perform a major life activity or

---

[3]     It's undisputed that Rosas requested an accommodation for her carpal tunnel twice. [Dkt. 10, ¶¶ 5, 31.]

is significantly restricted as to the condition, manner or duration under which the individual can perform the major life activity as compared to the average person in the general population." *Furnish v. SVI Sys., Inc.*, 270 F.3d 445, 450 (7th Cir. 2001) (cleaned up). Rosas, Walmart says, didn't allege that her carpal tunnel significantly limits a major life activity, specify her physical limitations due to carpal tunnel, or explain how those limitations impacted her ability to do her job in order to show that she has an ADA-qualifying disability. [Dkt. 21 at 11–12.]

But Rosas has done enough to plead a disability at this stage. It's well-established that the determination of disability is a fact intensive inquiry made on an individualized, case-by-case basis. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 199 (2002), *overturned due to legislative action* (2009); *Dadian v. Vill. of Wilmette*, 269 F.3d 831, 837 (7th Cir. 2001); *Zimny v. Geneva Cmty. Unit Sch. Dist. 304*, 718 F. Supp. 3d 766, 782 (N.D. Ill. 2024). Consequently, it's generally not appropriate to determine whether a plaintiff has a disability under the ADA at the motion to dismiss stage. This is especially true when the disability "is one whose symptoms vary widely from person to person. Carpal tunnel syndrome . . . is just such a condition." *Toyota*, 534 U.S. at 199. Rosas pled that she has carpal tunnel, provided medical documentation, and explained that the "repetitive motions" required to frost cupcakes on a large scale (what Rosas refers to as "mass produc[ing]"), aggravated

15

her carpal tunnel. [Dkts. 10, ¶¶ 2, 4, 6, 31; 25 at 12.] This is sufficient to plead a disability under the ADA.[4]

Walmart also argues that Rosas failed to adequately allege that she's a qualified individual. The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Instead of pleading facts to show she's a qualified individual, Walmart says, Rosas simply "parrot[ed] [] the statute's definition of 'disability.'" [Dkt. 21 at 12.] She also failed "to specify her job duties, which duties she was unable to perform, and which duties she could not perform due to an alleged disability, or any information regarding any accommodation she sought from [Walmart]." [Dkt. 26 at 9.] Of course, a plaintiff must do more than recite legal conclusions to adequately plead a claim. *See, e.g., Iqbal*, 556 U.S. at 678–79. But Rosas has plead each of these things. In her complaint, Rosas alleges that she is a cake decorator who is required to frost cupcakes for eight hours a day. The repetitive motions required aggravated her carpal tunnel, making it difficult to do her job. Consequently, she sought medical accommodation and alleges that she can work with a reasonable accommodation. [Dkt. 10, ¶¶ 1–2, 5, 31, 56.] Although Rosas didn't specify the accommodation in her complaint, she clarified in her response brief that she included in her medical documentation to

---

[4] Rosas also claims that her mental health qualifies as a second disability, explaining that she pled "how the hostile work environment was affecting her mental health and her ability to work." [Dkt. 25 at 15.] But Rosas' complaint doesn't define her mental health issue at all, and Rosas never requested an accommodation for it, so she cannot bring a failure to accommodate claim based on her alleged mental health issue.

WASC a "Return to Work" order submitted to a prior employer stating that she should be assigned to a register position. [Dkt. 25 at 15–16.] A plaintiff may "elaborate on [her] factual allegations so long as the new elaborations are consistent with the pleadings." *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 753 n.2 (7th Cir. 2021) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). The Court may reasonably infer from the representations in Rosas' brief that she requested the same accommodation from Walmart. This assertion is not inconsistent with her complaint, but rather clarifies the factual allegations underlying her claims. Consequently, Rosas has sufficiently pled that she's a qualified individual within the meaning of the ADA.

Finally, Walmart further argues that Rosas failed to plead the third prong of a failure to accommodate claim because a plaintiff cannot base her claim "solely on the allegation that the employer failed to engage in the interactive process." [Dkt. 26 at 9.] But having acknowledged that Rosas, through her briefing, clarified that she requested a specific accommodation and it's uncontested that Walmart denied that accommodation, it's clear that she is not solely relying on her allegation that Walmart failed to engage in the interactive process. It is also based on her request for, and Walmart's alleged failure to assign her to, another position. *See Connors v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021) ("The duty to reasonably accommodate a disabled employee may require a reassignment to a vacant position." (citing 42 U.S.C. § 12111(9)(b))). Having pled all three prongs, Rosas' failure to accommodate claim survives.

Next, Walmart argues that Rosas' discrimination claim fails. To properly plead discrimination under the ADA, a plaintiff must allege that the (1) "[she] is disabled within the meaning of the Act," (2) "is nevertheless qualified to perform the essential functions of the job either with or without reasonable accommodation, and" (3) "has suffered an adverse employment action because of [her] disability." *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015). Having concluded that Rosas sufficiently alleged that she is a qualified individual with a disability, all that remains is whether she suffered an adverse action because of her carpal tunnel.

Although constructive termination qualifies as an adverse employment action, *Alexander*, 739 F.3d at 980, Rosas failed to plead that she was constructively terminated *because of* her disability. Her factual allegations that might form the basis of a constructive termination claim (e.g., that her medical accommodation request was denied, that discriminatory comments and other derogatory treatment created a hostile work environment) don't state or even hint that Rosas' disability motivated any alleged discriminatory action. Rosas states that Walmart did take an adverse action "because of her disability and failed to make a reasonable accommodation." [Dkt. 25 at 16.] But this statement is conclusory and unsupported by the allegations in her complaint. Rosas didn't identify any other adverse action taken because of her disability. Consequently, she failed to plead discrimination under the ADA—this claim under Count III is dismissed.

18

## IV. Conclusion

For the reasons above, Walmart's motion to dismiss is granted in part and denied in part. The motion is granted as to Rosas' ADA discrimination claim in Count III and is otherwise denied.

Enter: 24-cv-7409
Date:  March 14, 2025

_____
Lindsay C. Jenkins
United States District Judge